A95A2652. METROPOLITAN ATLANTA RAPID TRANSIT
AUTHORITY v. FIFE.
(469 SE2d 420)

ANDREWS, Judge.

We granted Metropolitan Atlanta Rapid Transit Authority's (MARTA) request for an interlocutory appeal to determine whether the trial court erred in denying MARTA's motion for summary judgment on Sharon Fife's slip and fall claim. Fife's complaint alleged MARTA was negligent in failing to warn of a hazardous condition because she twisted her ankle in front of the College Park MARTA station as she stepped off the curb into a drainage culvert underneath a manhole cover.

In the order denying MARTA's motion for summary judgment, the trial court found that Fife was familiar with the MARTA station where the accident occurred, had an unrestricted view of the manhole cover, and the manhole cover was the same size and appearance as manhole covers found in the Atlanta area and elsewhere. But, the trial court held there was an issue of material fact as to whether MARTA was negligent in not posting a warning near the culvert.

"To prevail at summary judgment under OCGA § 9-11-56, the

moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. [Cit.] A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a [genuine] jury issue on at least one essential element of plaintiff's case. . . . [Cit.] A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Construing the evidence, as we must, in favor of Fife as non-movant on summary judgment, the record shows that on October 6, 1992, Fife walked out of the College Park MARTA station at around 7:15 in the evening. It was not quite dark yet and she saw her sister, who was picking her up, pull over to the curb in front of the station. Fife was "very familiar" with the College Park MARTA station. She testified that previously she had been picked up in this same spot. Fife agreed that her sister was not parked in the "kiss and ride" area designated for picking up and dropping off passengers at the MARTA station. When shown a picture of the curb at her deposition, Fife stated the culvert appeared to be in plain view in the picture; however, she could not see it as she was walking toward it. But, Fife admitted in her deposition that she was aware that a manhole cover indicated a drainage space.

1. MARTA contends this is a static condition which is open and obvious and, therefore, it had no duty to warn. Fife claims the plain view doctrine does not apply in this instance because she could not see the drainage culvert as she was walking toward it or before she fell.

"Q. When you first looked after the fall, was it easy to see? A. No. Q. Why not? A. I just couldn't see it. Had I saw it then I wouldn't have fallen into it. I just couldn't see it. . . . Q. Could you see it before you fell? A. No."

When asked what she was looking at as she stepped off the curb, Fife replied: "A. I was looking at the handle on the door to open the door. Q. You were not looking where you were stepping? A. I guess I was focusing on the door."

Also, when asked if there was anything to prevent her from seeing where she was stepping, Fife responded, "Yes. . . . The car door."

Thus, Fife has not introduced any evidence which would show that the hazard was not in plain view, but, rather that she did not look down and see the hazard because she was looking at the car door.

Indeed, the picture of the curb in question shows the depression to be plainly visible to anyone standing at the curb. Accordingly, Fife's contention that the plain view doctrine does not apply is without merit.

2. Since the drainage depression was open and obvious, MARTA was under no duty to warn. An owner or occupier of land has a duty of exercising ordinary care to keep the premises and approaches safe for invitees. OCGA § 51-3-1. The basis of the owner's liability is a superior knowledge of the condition that subjected the invitee to an unreasonable risk of harm. *Pound v. Augusta Nat.*, 158 Ga. App. 166 (279 SE2d 342) (1981). The hazard in this case is a "static" condition which is not dangerous unless someone fails to observe it and steps into it. *Gaydos v. Grupe Real Estate Investors*, 211 Ga. App. 811, 813 (440 SE2d 545) (1994). In cases involving static conditions, "if the invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting in view of his knowledge, assumes the risks and dangers incident to the known condition." (Citation and punctuation omitted.) *Rose v. Kennesaw House*, 203 Ga. App. 648, 649 (417 SE2d 379) (1992). Also, we have held that where there is nothing to obstruct or interfere with the invitee's ability to see the static defect, the owner is justified in assuming that the visitor will see it and realize the risks involved. *Crenshaw v. Hogan*, 203 Ga. App. 104, 105 (416 SE2d 147) (1992). A claim involving a static defect differs from other slip and fall cases in that when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have knowledge of it and cannot recover for a subsequent injury resulting therefrom. *Brown v. Carlisle*, 214 Ga. App. 483, 484 (448 SE2d 256) (1994). See also *Thomas v. Southwest Ga. Community Action Council*, 215 Ga. App. 638 (451 SE2d 800) (1994) (an elderly lady who elected to exit the building by slippery brick landing and who had done so one or two times previously was presumed to have knowledge of this dangerous static condition).

Here, the hazard was in plain view and Fife testified that she was very familiar with this MARTA station and had been picked up at that same spot in the past. Therefore, Fife is presumed to have knowledge of any hazard associated with the area.

Further, where an invitee departs from the route designated and maintained by the owner for the invitee's safety, then "the degree of caution required by the invitee's duty to exercise ordinary care for her own safety is heightened by any increased risk resulting from that choice." *Gaydos*, supra at 813. In *Gaydos*, the plaintiff cut across the lawn to the parking lot instead of using the walkway provided, and tripped and fell when stepping off the sloping concrete curb. We re-

jected plaintiff's contention that the rule regarding static defects was inapplicable because the defect, a crack in the concrete, was not visible to a person walking toward it, and found plaintiff should have been aware of any lack of visibility and exercised greater caution. Id. at 813.

In the instant case, MARTA provided an area for picking up passengers so that they would not have to enter and exit on the street. But, Fife chose to use the street instead. Accordingly, when an unauthorized route is being used improperly, the invitee assumes the risk and must use greater caution for her safety. *Gaydos*, supra at 813.

Therefore, for the reasons discussed above, we find MARTA was under no duty to warn of this static condition and Fife failed to exercise ordinary care for her own safety. Thus, the trial court erred in denying MARTA's motion for summary judgment.

*Judgment reversed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Johnson, Blackburn and Smith, JJ., concur. Ruffin, J., concurs in the judgment only. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent from the judgment of reversal which effectively grants summary judgment on behalf of defendant Metropolitan Atlanta Rapid Transit Authority ("MARTA") in plaintiff Sharon Fife's tort action arising out of a dangerous condition on MARTA's property. According to the complaint, on October 6, 1992, at approximately 7:15 p.m., plaintiff "tripped and fell in a trench at the curb, . . . in an area of [defendant's College Park train] station designated for customer drop off and pick up." Plaintiff denied that there was any lighting on this particular spot, but "it wasn't dark yet, so it was kind of — it was dusk." Plaintiff saw her sister, who would give her a ride home, "just as [plaintiff] stepped out of the MARTA train station." Plaintiff "looked at her [sister's] car to notice it and then . . . just walked towards the car." When the sister "pulled up to the curb, . . . [plaintiff] stepped off the curb and that's where [she] fell." Plaintiff "was watching where [she] was stepping, but when [she] got to the car door, then [she] looked at the handle on the car door." When asked whether the place where she fell was easy to see, plaintiff replied, "No. . . . I just couldn't see it. Had I saw it then I wouldn't have fallen into it. I just couldn't see it." Plaintiff expressly clarified that, before she fell, she "didn't see any of that. And I really don't think that it looked like it looks now [in March 1994]." Plaintiff identified defense Exhibit 1 at her deposition as depicting "a trench or drainage," i.e., a slanted gutter leading to a manhole in the curb. "From the angle on the picture it's in plain view, *but from the direction [plaintiff] was coming it was not in plain view*." (Emphasis supplied.) "When [plaintiff] stepped off the curb, [she] expected to step

on a flat surface so [when she] put [her] foot on the [slanted surface of the drainage gutter], . . . it twisted."

Based upon this recitation from plaintiff's deposition, I do not join in the majority's characterization of the evidence, namely that plaintiff "has not introduced any evidence which would show that the hazard was not in plain view[.]" (Majority opinion, ante, p. 299.) Furthermore, MARTA introduced no evidence that the curb was painted in marked contrast to the gutter or that patrons were warned to step down or step carefully. Judging from MARTA's own photographic exhibit, the trier of fact could very well agree with plaintiff that the slanted trench was not in plain view *from the direction and perspective* of the plaintiff as she exited the train station but instead was *hidden.* Consequently, the fact that plaintiff frequented this train station before proves nothing as to her knowledge of the danger posed by the hidden slant of the drainage gutter at this particular location, just as " '(t)he mere fact that (she) has been in the area before will not preclude (her) from recovery for injuries received from defective premises unless (her) failure to observe the defect amounts to a lack of that care which an ordinarily prudent person would exercise under the circumstances.' *Kreiss v. Allatoona Landing*, 108 Ga. App. 427, 435 (2b) (133 SE2d 602) (1963)." *Shackelford v. DeKalb Farmer's Market*, 180 Ga. App. 348, 350 (2) (349 SE2d 241). It is the general rule that "questions of negligence, diligence, contributory negligence, and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them except in plain and indisputable cases. Added to that list are related issues of assumption of risk, lack of ordinary care for one's own safety, lack of ordinary care in failing to foresee a condition which could cause injury, and even where there is no dispute as to the facts, it is usually for the jury to say whether the conduct in question met the standard of the reasonable man. Unless no other conclusion is permissible, questions of negligence are matters for jury resolution and are not ordinarily susceptible to summary adjudication." (Citations and punctuation omitted.) *Cunningham v. Nat. Svc. Indus.*, 174 Ga. App. 832, 836 (331 SE2d 899). In my view, a jury question is presented in the case sub judice as to whether plaintiff Sharon Fife *should* have seen the dangerously obscured slanting gutter she admits she *did not see* and testified she *could not see* from her direction and perspective. The trial court correctly perceived that genuine issues of material fact remain for jury resolution and denied MARTA's motion for summary judgment. As my colleagues in the majority would nevertheless reverse that correct determination, I respectfully dissent.

DECIDED FEBRUARY 21, 1996.

*George E. Powell, Jr.*, for appellant.
*Divida Gude*, for appellee.