A97A1842. SHARFUDDIN v. DRUG EMPORIUM, INC.
(498 SE2d 748)

BIRDSONG, Presiding Judge.

Rubab Sharfuddin appeals the grant of summary judgment to Drug Emporium, Inc. in her lawsuit seeking damages for injuries she allegedly sustained when she slipped and fell in a Drug Emporium store. Her complaint averred that in the store she slipped on water that Drug Emporium failed to remove. Following discovery, Drug Emporium moved for summary judgment based upon Sharfuddin's deposition testimony. The motion contended that there was no evidence to prove the essential elements of her cause of action that Drug Emporium had actual or constructive knowledge of the water on the floor and that she was without knowledge of the water.

In response, Sharfuddin asserted only that genuine issues of material fact existed because Drug Emporium did not prove that it had a reasonable inspection program in operation on the day of her fall. Subsequently, the trial court granted summary judgment to Drug Emporium, but did not specify on which basis the motion was granted. Sharfuddin has now filed this appeal in which she asserts that the grant of summary judgment was in error because genuine issues of material fact remained for trial. *Held*:

1. Although this case was decided before our Supreme Court's recent decision in *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403), concerning grants of summary judgment in slip and fall cases, appellate courts must apply the law as it exists at the time of the appellate court's judgment, even though doing so might change the judgment of the trial court which was correct at the time it was rendered. *Clary v. State*, 151 Ga. App. 301 (259 SE2d 697). Careful examination of *Robinson v. Kroger* shows that the trial court's judgment in this appeal is not affected by that decision.

The Supreme Court "granted certiorari [in *Robinson*] to examine 'the proper standard for determining whether the plaintiff in a "slip and fall" premises liability case has exercised ordinary care sufficient to prevail against a motion for summary judgment,'" (id.) and "to examine the appellate decisions which have as their crux a determination as a matter of law that an invitee failed to exercise ordinary care for personal safety." Id. at 739. Neither topic is present in this case. Nevertheless, while considering those matters, the Supreme Court also addressed the "distraction doctrine," took the opportunity to explain the Court's earlier decision in *Barentine v. Kroger Co.*, 264

Ga. 224 (443 SE2d 485), and also addressed the parties' burdens of proof in slip and fall cases in light of its decision in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). The Supreme Court labeled these issues as other "troubling aspects of the judicial treatment of the invitee's exercise of ordinary care for personal safety." *Robinson*, supra at 744.

The distraction doctrine is not an issue in this appeal, and careful examination of *Robinson* reveals that the focus of the Supreme Court's analysis of the burden of proof in slip and fall cases was on the second prong of the elements of a foreign substance slip and fall cause of action concerning the plaintiff's knowledge of the foreign substance (see *Alterman Foods v. Ligon*, 246 Ga. 620, 623-624 (272 SE2d 327)) and not the defendant's actual or constructive knowledge of the foreign substance which falls within the first prong. See *Robinson v. Kroger*, supra at 746-747.

In fact, in *Robinson*, the Supreme Court reaffirmed, without modification, that "to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard." Id. at 748-749. Further, the Supreme Court held that its modification to the plaintiff's burden of coming forward with the evidence on the second prong applies only after the first prong had been established or assumed for purposes of a motion for summary judgment. Id. at 748. Consequently, we find the Supreme Court's decision in *Robinson* did not change either the first prong of a plaintiff's cause of action under *Alterman Foods* or the burden on movants for summary judgment on the first prong as established in *Lau's Corp. v. Haskins*, supra.

Nevertheless, we are mindful of the Supreme Court's admonition in *Robinson v. Kroger*, supra at 748, that the routine issues of premises liability, including a defendant's negligence, i.e., the defendant's actual or constructive knowledge of the hazard, generally are not susceptible to summary judgment. Thus, summary judgment should be granted and affirmed even under the first prong only when the evidence is plain, palpable, and undisputed, i.e., where reasonable minds cannot differ on the conclusion to be reached. *Wade v. Mitchell*, 206 Ga. App. 265, 268 (424 SE2d 810). For the reasons discussed in detail below, we find this to be such a case because Sharfuddin presented *no evidence* that Drug Emporium had actual or constructive knowledge of the water on the floor and *no evidence* from which such knowledge could be inferred.

2. The standards applicable to motions for summary judgment under the first prong of *Alterman Foods* are as announced in *Lau's Corp. v. Haskins*, supra. Further, when ruling on a motion for summary judgment, the opposing party must be given the benefit of all reasonable doubt, and the court should construe the evidence and all

inferences and conclusions therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843). Also, when reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432); *Bishop v. Mangal Bhai Enterprises*, 194 Ga. App. 874 (1) (392 SE2d 535). In these proceedings, the rules on admissibility of evidence apply, and hearsay has no probative value unless it is part of the res gestae. *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 65 (397 SE2d 576). Indeed, "[e]vidence offered on motion for summary judgment is held to the same standards of admissibility as evidence at trial, and evidence inadmissible at trial is generally inadmissible on motion for summary judgment." (Punctuation omitted.) *Hall v. Cracker Barrel &c.*, 223 Ga. App. 88, 92 (476 SE2d 789). Thus, it is the duty of each party at summary judgment to present his case in full or risk judgment going against him (*Summer-Minter & Assoc. v. Giordano*, 231 Ga. 601, 604 (203 SE2d 173)), and it is only where the contradiction by other witnesses is to a matter relevant and material to the issue that it is error to grant a motion for summary judgment. *Raven v. Dodd's Auto Sales &c.*, 117 Ga. App. 416, 422 (160 SE2d 633). Lastly, on appeal, a grant of summary judgment will be affirmed if it is right for any reason. *Malaga Mgmt. Co. v. John Deere Co.*, 208 Ga. App. 764, 767 (431 SE2d 746).

3. Contrary to the assertion in the dissent (which was not raised by Sharfuddin either in the trial court or on appeal), this is a foreign substance slip and fall case, and not a case under the second category of *Alterman Foods* in which the proprietor intentionally placed a substance on the floor. See *Alterman Foods*, supra at 623-624. The dissent's argument to the contrary is based on Sharfuddin's testimony at one point that the water looked as if it had been left on the floor by somebody cleaning. For the reasons discussed below, Sharfuddin's deposition testimony was not admissible evidence sufficient to create a question of fact on this issue. See *Hall v. Cracker Barrel*, supra. The true nature of her testimony can be appreciated only when it is considered in context.

Sharfuddin testified that after her fall she saw separate drops of water on the floor near where her foot slipped in an area that was no larger than three inches by three inches. Within that area, some of the drops were closer together and some more separated, but all of the water in the drops would fill only two tablespoons.

Sharfuddin was asked: "And is the water in the shape as if it was a splashdown, like a spillage, or is it just like sitting, almost circular?" Sharfuddin answered: "It was like a sitting one like just somebody has cleaned it or left, you know, like cleaning stuff, but not like

a splash. It was not like a splash." Question: "Okay. Not like a splash but you said it seemed as if someone had been cleaning and left it there?" Sharfuddin: "Maybe, just like it was there for, you know, a long time. Not long time. It was there. You know, if — that's what I can't get from this. If you drop something, it's scattered too many areas but it was not that, too many areas. Drops were there but that's what I saw at that point. That that was a splash, I cannot know."

Later, Sharfuddin was asked, "Okay. And then what made you say it looked as if someone had been cleaning, that that's the way it looked?" Answer: *"Because I was just assuming* because you said that is it a — was split." (Emphasis supplied.) Question: "A splash?" Answer: "A splash. It was there. The water showed it was there for, you know, like before that. It was not like a recent something as, you know, just now and then it was just like — there was no — " Sharfuddin's counsel: "You're doing fine."

Question: "Yeah, and I would like to know what was it about the water that told you it was here not recently or a long time because I heard you — didn't you say something like that, you could tell it hadn't just happened?" Sharfuddin: "Yes. You were saying that it was like it was a splash. I'm sorry. What was that word?" Her counsel: "Splash?" Question: "Splash?" Sharfuddin: "Something dropping from it. It doesn't seem like it just dropped from something, like any type or thing. It was like, you know, you left water. Was like there. I don't know what maybe —"

Question: "Then what was it made you say it had been there a long time? Let me ask you this. What is a long time to you?" Answer: "You asked me was it a splash. I said it was not a splash. It seems that it was not there. It was not a splash." Question: "Okay." Sharfuddin: "That's what I told you that made me think that it was not a splash because you asked me is it a splash, spillage or something. It doesn't seem like that. That's what I said. It was not."

Question: "Okay. Now I'm with you on that. How long had the water been there before you fell?" Sharfuddin's counsel: "If you ask it in terms of what she observed, that's fine. If you're asking her to speculate, I'm going to object." Defense counsel: "Well, do you have an answer? Do you know how long it was there?" Sharfuddin: "No, I cannot, you know, see backwards after. I cannot tell you the time. You cannot tell the time by this spillage." Question: "All right. So am I correct to say you don't know how long those droplets of water were in aisle seven before you fell?" Sharfuddin: "Yes."

This testimony shows that the statement, relied upon by the dissent, was not an admissible expression of fact or opinion that the two tablespoonfuls of water drops dispersed in a three-by-three inch area was the residue of someone cleaning. Sharfuddin merely "assumed" that the water came from someone cleaning because she was asked if

the water was splashed. Thus, this testimony was merely an unfounded assumption.

(a) Even if this statement could be labeled an inference she reached from looking at the drops, without some other evidence, however, any such inference that these two tablespoonfuls of water came from Drug Emporium cleaning the floor rather than some other source is unreasonable. An inference cannot be based on mere conjecture or possibility (*Derry v. Clements,* 197 Ga. App. 173, 174 (397 SE2d 594)), and "[a]n inference cannot be based on evidence which is too uncertain or speculative. . . ." (Punctuation omitted.) *Butler v. Huckabee,* 209 Ga. App. 761, 762 (434 SE2d 576). Thus, any inference from this evidence alone is unreasonable, and as a non-movant is entitled only to the benefit of reasonable inferences (*Lau's Corp.,* supra at 495), this unreasonable inference does not aid her case. In the same manner and for the same reasons, the dissent's purported inferences derived from the black scuff marks on the floor are also unreasonable. As the black scuff marks were merely near the water drops, no reasonable inference can be drawn to connect them.

(b) Additionally, Sharfuddin is not authorized to state her opinion about the source of these water drops. "Lay witnesses . . . may state their opinion only when it is based upon their own observations, and a lay opinion is admissible only when it is necessary in order for the witness to convey those same observations to the jury. The opinion of a lay witness is not admissible when all of the facts and circumstances upon which it is based are capable of being clearly defined, so that the jury may readily reach its own opinion therefrom." (Footnotes omitted.) *Johnson v. Knebel,* 267 Ga. 853, 855 (485 SE2d 451). Sharfuddin's opinions about what she "assumed" to be the source of these drops were not necessary to convey her observations about the drops, and examination of her testimony shows that she otherwise gave a full description of the drops. Therefore, her opinion, if it can be called that, was not admissible to prove that the water came from any particular source.

(c) Even assuming Sharfuddin somehow could be considered qualified to testify that the water was dripped and not spilled or splashed, whether the water was dripped, dropped, or splashed is not the issue here. The issue is whether Drug Emporium applied the water to the floor so that this case would fall within the second category of cases under *Alterman Foods.* Thus, because the water could have been dripped, dropped, or splashed by another customer or someone unconnected with Drug Emporium, it is the source of the water and not the nature of the drops that is important. No admissible evidence in Sharfuddin's testimony is sufficient to create a jury issue on whether Drug Emporium put the water on the floor, much less establish that this is not a foreign substance case.

(d) Further, Sharfuddin's testimony is self-contradictory in regard to the source of the water and the time in which the water may have been on the floor. Her testimony contains not one positive statement on these topics that she did not contradict later in her deposition. Consequently, the contradictory testimony rules must be applied because Sharfuddin offered no explanation for the contradictions. *Gentile v. Miller, Stevenson &c., Inc.*, 257 Ga. 583 (361 SE2d 383); *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (343 SE2d 680). Therefore, the favorable portions of Sharfuddin's contradictory testimony must be eliminated, and then the remaining testimony, as it then stands, must be construed in her favor. Id. at 28. Doing so leaves no evidence showing that the water drops were the result of cleaning the floor, or that the drops had been on the floor for a long time.

(e) Review of Sharfuddin's deposition also shows that her testimony was vague and equivocal. Because at trial vague or equivocal testimony is not sufficient to overcome a motion for a directed verdict (*Prophecy Corp.*, supra at 28; *Douglas v. Sumner*, 213 Ga. 82, 85 (97 SE2d 122)), this vague and equivocal testimony is also insufficient to create a triable issue at summary judgment. "Summary judgment may be granted on evidence that would compel the direction of a verdict." (Punctuation omitted.) *Eiberger v. West*, 247 Ga. 767, 769 (281 SE2d 148).

4. Therefore, this appeal was properly treated as a foreign substance slip and fall case, and because Sharfuddin's response to the motion for summary judgment conceded that Drug Emporium had no actual knowledge of the water, our consideration is limited to whether Drug Emporium had constructive knowledge of the water. In this regard, Sharfuddin also conceded that no Drug Emporium employee saw her fall and no employees were working close enough nearby to see the water. She further testified that she did not see any Drug Emporium employees with cleaning materials before or after her fall, and she saw no water any place other than the drops where she fell.

Under this record, Drug Emporium discharged its obligation under *Lau's Corp.* by showing there was no evidence, as required by the unmodified first prong of *Alterman Foods*, supra, that it had knowledge, actual or constructive, of the water on the floor. Consequently, Sharfuddin could not rest on her pleadings, but was required to point to specific evidence giving rise to a triable issue on the question of Drug Emporium's knowledge. *Lau's Corp.*, supra at 491. As Sharfuddin produced no evidence directly showing that Drug Emporium had constructive knowledge of the water nor any evidence from which such knowledge might be inferred, the trial court did not err by granting summary judgment to Drug Emporium.

As no evidence exists from which one can conclude that Drug Emporium had knowledge of the water, it is unnecessary to consider whether Sharfuddin had or should have had knowledge of the water.

5. The dissent has misconstrued and impermissibly redefined the burden on movants for summary judgment stated in *Lau's Corp. v. Haskins*, which was not altered by *Robinson v. Kroger Co.*, supra. Regarding the first prong of *Alterman Foods* in a foreign substance slip and fall case, *Lau's Corp.* clearly sets forth the burden on defendants who move for summary judgment on the grounds no evidence supports the plaintiffs' cause of action: "[A]t summary judgment a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-moving party's case. Rather, that party must demonstrate by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's case." *Lau's Corp. v. Haskins*, supra at 495.

Even after *Robinson v. Kroger Co.*, plaintiffs in foreign substance slip and fall cases seeking to establish their cause of action must prove that the defendants had actual or constructive knowledge of the hazard, i.e., foreign substance, on the floor. *Robinson v. Kroger Co.*, supra at 748; *Alterman Foods*, supra at 623; *Hartley v. Macon Bacon Tune*, 227 Ga. App. 679, 683 (490 SE2d 403); *Coffey v. Wal-Mart Stores*, 224 Ga. App. 824, 826 (482 SE2d 720). Although our Supreme Court in *Robinson v. Kroger Co.* modified the burden on the parties on the second prong of the elements of a foreign substance slip and fall case, the Supreme Court did not revise the contents of the first element nor modify the burden of proof on this element.

Thus, *Robinson v. Kroger Co.* did not change the fact that "[t]hese elements are part of the plaintiffs' cause of action, and, consequently, are not affirmative defenses." *Hartley v. Macon Bacon Tune*, supra at 684 (8). Therefore, under *Lau's Corp.* a defendant/movant who seeks summary judgment because no evidence supports the first element of a foreign substance of the plaintiff's cause of action only "must demonstrate by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's case." *Lau's Corp.*, supra at 495.

As the burden the dissent would impose on Drug Emporium exceeds, and is different from, the burden set forth in *Lau's Corp.* and *Robinson v. Kroger Co.*, this effort to construct a new burden for defendants in slip and fall cases must fail because " '[t]he decisions of the Supreme Court shall bind all other courts as precedents.' Ga. Const. 1983, Art. VI, Sec. VI, Par. VI; *Coffey v. Wal-Mart Stores*, [supra at 827]." *Hartley v. Macon Bacon Tune*, supra at 682 (4). Further, after *Robinson v. Kroger Co.*, there can be no reason to do so. Thus, "it is not useful for this Court to attempt to revise or redefine

the burden stated in *Lau's Corp.* so that a different burden appears to be placed on movants for summary judgment from the one stated in *Lau's Corp.* at 495." *Bruno's Food Stores v. Taylor*, 228 Ga. App. 439, 452 (491 SE2d 881) (special concurrence). Of course, the burden of producing evidence on the second prong of these elements was changed by *Robinson v. Kroger Co.*, supra at 747-749, but that is not an issue in this appeal.

Therefore, Drug Emporium has met its burden as a movant for summary judgment when the appropriate standards in *Robinson v. Kroger Co.*, *Lau's Corp.*, and *Alterman Foods* are applied.

6. Moreover, Sharfuddin's contention that Drug Emporium was under a burden to prove that its inspection program was in operation before she was required to show Drug Emporium's prior knowledge of the water is not well taken. "Cases holding that a proprietor must first show that a reasonable inspection and cleaning program was used before the plaintiff is required to show how long the substance was on the floor either were decided before *Lau's Corp.* eliminated the burden on movants to establish the nonexistence of any genuine issue of material fact or disprove the plaintiff's cause of action, or were decided after *Lau's Corp.* but erroneously relied upon implicitly overruled authorities decided before the decision in *Lau's Corp.*

"Therefore, [Drug Emporium] had no burden to show that it had an inspection procedure in place. As [Sharfuddin] produced no evidence that [Drug Emporium] had any knowledge, actual or constructive, that the [water] was on the floor, [she] failed to carry [her] burden on one of the essential elements of [her] claim and [her] claim must tumble like a 'house of cards.' *Lau's Corp.*, supra." *Hartley v. Macon Bacon Tune*, supra at 685. As this issue concerns the first prong of a slip and fall plaintiff's cause of action, nothing in *Robinson v. Kroger Co.* alters this result. Accordingly, Sharfuddin's contention is without merit.

Therefore, the trial court did not err by granting summary judgment to Drug Emporium.

*Judgment affirmed. Andrews, C. J., Pope, P. J., Johnson and Ruffin, JJ., concur. Blackburn and Eldridge, JJ., dissent.*

ELDRIDGE, Judge, dissenting.

As much as the majority may wish, *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997), is applicable to this case. *Robinson* specifically singled out *Blake v. Kroger Co.*, 224 Ga. App. 140 (480 SE2d 199) (1996), which dealt with constructive knowledge and the failure to prove compliance with the owner/occupier's inspection policy. Quoting from *Blake*, the Supreme Court held, " '[u]nder *Lau's Corp.*[ v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)], the defendant proprietor has no burden whatsoever on summary judgment to pro-

duce evidence to negate the plaintiff's theory of recovery'; [cits.] Because the *Lau's Corp.* decision modified the practical application of the [standard under] *Alterman Foods[ v. Ligon*, 246 Ga. 620 (272 SE2d 327) (1980)], we must modify *Alterman Foods* somewhat in order to regain balance in the allocation of the burden of proof." *Robinson*, supra at 747. "As a group, these rulings are suspect for several reasons. First, by routinely adjudicating as a matter of law questions of the plaintiff's and defendant's negligence, proximate cause, and the exercise of ordinary care, these decisions have made commonplace what is, in reality, an unusual circumstance in tort law, since '(a)s a general proposition, issues of negligence, contributory negligence and lack of ordinary care for one's own safety are not susceptible of summary adjudication . . . but should be resolved by trial in the ordinary manner. The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable.' " (Citations omitted.) Id. at 739. "Where reasonable minds can differ as to the conclusion to be reached with regard to questions of whether an owner/occupier breached the duty of care to invitees and whether an invitee exercised reasonable care for personal safety, summary adjudication is not appropriate. *Pound v. Augusta National*, 158 Ga. App. 166 (279 SE2d 342) (1981)." Id. at 740. "As a result, a defendant who moved for summary judgment achieved success by establishing either that it had no actual or constructive knowledge of the foreign substance, or that the plaintiff had been negligent by either confronting the hazard with actual knowledge of its presence or by failing to exercise ordinary care to ascertain the hazard's presence. See *Hilsman v. Kroger Co.*, 187 Ga. App. 570, 572 (370 SE2d 755) (1988) (Sognier, J., concurring specially): 'The rule has been, and continues to be, that on motion for summary judgment, regardless of which party would have the burden of proof at trial, if a material fact has been alleged in the complaint, can be reasonably drawn from the pleadings, or has been raised by the evidence placed in the record by any party, the defendant-movant has the burden of proving the non-existence of that fact and it is not until the movant carries its own burden that the burden then shifts to the plaintiff-respondent. (Cits.)' After this Court's decision in *Lau's Corp. v. Haskins*, supra, 261 Ga. 491, the weighty burden placed on slip-and-fall plaintiffs by *Alterman Foods[* was made manifest. Under *Lau's Corp.*, a defendant movant who did not bear the burden of proof at trial need no longer 'affirmatively disprove the nonmoving party's case; instead the burden on the moving party may be discharged by pointing out by reference to the . . . record that there is an absence of evidence to support the nonmoving party's case.' Id. at 491. Since the defendant had only to point to the deficiency in the plaintiff's

case and no longer had to affirmatively negate by the presentation of evidence an essential element of the plaintiff's case, in order for a plaintiff to survive a motion for summary judgment, the plaintiff was required to establish both the defendant's knowledge of the foreign substance and the plaintiff's lack of negligence either before the defendant moved for summary judgment or in response to that motion. [Cits.]" Id. at 746-747. Plaintiff's burden of coming forward with evidence is to raise a material issue of fact, not conclusively prove the fact which is for the jury to decide. Thus, *Robinson* directly impacts when summary judgment is appropriate, even under the first prong of *Alterman Foods*.

The record and plaintiff's evidence show that plaintiff suddenly slipped and fell after stepping in some drops of water on the floor within one foot of the end of the aisle nearest the pharmacy. She was not distracted either visually or auditorially at the time of her fall.

Plaintiff fell to the floor on her buttocks and back. Her feet went out in front of her. The fall was very sudden. Plaintiff had stepped on something that caused her to slip. After her fall, she saw on the floor a few small, separate drops of water near where her foot slipped and toward the center of the aisle. When she examined the drops of water, some had been smeared by her foot. She found the drops of water were located over an area of two to three inches. *The water drops did not form a puddle. They were sprinkled over the three-inch area like drips. In appellant's opinion, the water drops were as if someone had been cleaning and left the drops; it was not a splash or spatter because the water drops were separate and dispersed.* In her opinion, there were approximately two tablespoonfuls of water making up the drops. After the fall, her clothes were not damp.

No warning signs were posted indicating that the floor was wet. Plaintiff did not see any employees with a mop, cleaning utensils, or bucket at any time either before or after the fall. The affidavits of the defendant's employees state precisely that there were no cleaning materials in the vicinity of plaintiff's fall but said nothing about when they had last mopped. However, the affidavits did not say that no routine cleaning had *taken place* that evening at the time of the fall and stated only that there were no cleaning materials *in the area* of the fall. Doug Horn, the store manager, testified in his first affidavit that the store was mopped and swept routinely twice daily, "once in the morning and again in the *evening*. This policy was followed on December 14, 1994." (Emphasis supplied.)

Plaintiff did not see the water drops prior to her fall. *In the general area just before the location of her fall, plaintiff saw black scuff marks, some of which were straight and others diagonal to the aisle. The scuff marks appeared to have been caused from dragging something across the floor. The black scuff marks did not have water drops*

*across them. Plaintiff testified that the small number and pattern of water drops appeared to her to have resulted from someone dripping water while cleaning, instead of from a splash or splatter.* This lay opinion based upon a factual predicate in conjunction with Horn's testimony that routine cleaning had occurred that evening creates a factual issue as to the defendant's actual or constructive knowledge of its own acts.

The majority seeks to exclude such lay opinion evidence, because it creates a jury question. This will be the post-*Robinson* methodology to dispose of premises liability cases — use either *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986) or some other evidentiary pretext to exclude plaintiff's evidence which creates a jury question and which the Court cannot do on summary judgment on the record in this case. Is it any wonder then that cases in the area of slip and fall from this Court the Supreme Court finds "[a]s a group, these rulings are suspect. . . ." *Robinson*, supra at 739.

However, OCGA § 24-9-65 reads: "Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor. If the issue shall be as to the existence of a fact, the opinions of witnesses shall be generally inadmissible." The Supreme Court has held that non-expert opinion evidence as to maintenance of floors was admissible as a matter in the common experience of laypersons when the factual basis and reasons were given, and such non-expert opinion evidence was sufficient to defeat summary judgment. *Martin v. Sears, Roebuck & Co.*, 253 Ga. 337, 338 (320 SE2d 174) (1984). "The evidence given involves the kind of information which is within the common knowledge and experience of men. OCGA § 24-9-65." *Horton v. State*, 258 Ga. 489, 490 (4) (371 SE2d 384) (1988). "The conclusion of a non-expert witness, or his opinion, is admissible when predicated upon facts stated by the witness." *Dean v. Littleton*, 161 Ga. 651, hn. 1 (131 SE 507) (1926); see also *Atlantic Coast Line R. Co. v. Godard*, 211 Ga. 373 (86 SE2d 311) (1955). When a nonexpert witness observed the matter in issue and cannot adequately state or describe the data so fully or accurately to place the jury in the place of the witness when the observation was made to enable them to equally draw the inference from such data, the witness may state an opinion after providing the factual basis and reasons for such opinion. *McGahee v. Phillips*, 211 Ga. 118 (84 SE2d 19) (1954); *Atlantic Coast Line R. Co. v. Blount*, 116 Ga. App. 86 (156 SE2d 409) (1967). To the extent that a lay witness qualifies testimony as to facts as a belief, opinion, or conclusion, this is admissible as fact not opinion. *Faucette v. State*, 71 Ga. App. 331 (30 SE2d 808) (1944). Clearly, anyone who has used a mop or observed someone else use a mop would be able to formulate an opinion that drops of water looked as if

dripped from a mop. The majority has gone to great lengths, chanting the exclusion mantra: "vague and equivocal," "unfounded assumptions," "unauthorized," and "self-contradictory," to exclude the plaintiff's factual description of what she saw and how she explained the particular droplet pattern of small drops of water that fits the description like no other of a dripping mop, so that the majority then can say that another customer may have made such unusual pattern. Has *Robinson* taught us nothing?

After her discovery of the water drops, plaintiff smeared the drops more with her foot to make it dry for others' safety. She informed the pharmacist that she had fallen. The manager came and talked to her. She took him to where she fell and pointed out the location of the water drops. The manager and other employees inspected the area, but found no water drops and denied that any had been present, which creates a material conflict in evidence.

"The plaintiff may make out a cause of action by showing an act or omission on the part of the defendant which was the proximate cause of [her] injury and which could not have been avoided by the plaintiff through the exercise of ordinary care. See, *Hogg v. First National Bank*, 82 Ga. App. 861 (62 SE2d 634) (1950)." *Alterman Foods v. Ligon*, supra at 623-624. When the slippery condition was thus created by the active negligence of the owner/occupier's employees or by their maintenance of the premises, such active negligence imputes actual or constructive knowledge to the owner/occupier. *Lipham v. Federated Dept. Stores*, 263 Ga. 865 (440 SE2d 193) (1994); *Martin v. Sears, Roebuck & Co.*, supra at 338; *Alterman Foods v. Ligon*, supra at 623-624; *American Nat. Bank &c. v. Howard*, 117 Ga. App. 834 (161 SE2d 838) (1968); *Angel v. Varsity, Inc.*, 113 Ga. App. 507 (148 SE2d 451) (1966). Thus, under the allegations of the complaint as framed, defendant would have constructive knowledge of the residue drops of water from its routine evening cleaning and superior knowledge. Plaintiff lacked equal knowledge, and by the testimony of the defense's own witnesses, the water drops could not be seen or even found to exist; the dispute as to the existence of the water creates a jury question.

In this case, plaintiff testified that, in her opinion, the small water droplets looked like they had dripped "like just somebody has cleaned it or left, you know, like cleaning stuff, but not like a splash. It was not like a splash." Such testimony gives rise to the reasonable inference that the water pattern of small drops came from a dripping mop while cleaning the floor and not like something that had made a splash or a spill as if caused by another customer. When the plaintiff gives an opinion based upon the facts that she observed regarding defendant's negligent maintenance, such opinion testimony satisfies *Alterman Foods v. Ligon*, 246 Ga. at 622, and creates a fact question

for the jury. See *Martin v. Sears, Roebuck & Co.*, supra at 338. Further, the small area of water droplets was in close proximity to a number of straight and diagonal scuff marks on the middle of the aisle, which looked like something heavy had been dragged across the floor by an employee, marring the floor surface. This evidence gives rise to the reasonable and favorable inference that an employee, as part of routine afternoon cleaning and maintenance, attempted to remove the black marks and caused the small water droplets. The weather was dry, and there had been no ice, rain, sleet, or snow, so that it is not a reasonable inference that the water had been tracked into the store as a foreign substance. The appellant testified that the water appeared to have been dripped on the floor and not spilled or splashed. If, in cleaning the floor, an employee left water drops on the floor and failed to clean them up, then this is active negligence, and knowledge is presumed. *Alterman Foods v. Ligon*, supra at 623-624; *American Nat. Bank &c. v. Howard*, supra. This satisfies the first prong of the *Alterman Foods* test, and the issues raised should be decided by a jury.

"The purpose of the Summary Judgment Act is to eliminate the necessity for a trial by jury where, *giving the opposing party the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence*, there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. . . . On a motion for summary judgment the burden of establishing the nonexistence of any genuine issue of material fact is upon the movants and the *evidence must be construed most strongly against them*." (Citations and punctuation omitted; emphasis supplied.) *Alterman Foods v. Ligon*, supra at 625. "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards." *Lau's Corp. v. Haskins*, supra at 491; OCGA § 9-11-56 (c).

I am authorized to state that Judge Blackburn joins in this dissent.

DECIDED FEBRUARY 20, 1998 ▮

*McCurdy & Stone, John D. Stone,* for appellant.

*Hicks, Casey & Barber, Mark A. Barber, Richard C. Foster, Sharon C. Barnes*, for appellee.