76828. PINKNEY v. VMS REALTY, INC. et al.
(375 SE2d 90)

BANKE, Presiding Judge.

The appellant sued to recover for personal injuries which she allegedly sustained when she stepped off the edge of a ramp in a multi-level parking garage owned and/or operated by the appellees and fell a distance of approximately one foot to the surface below. She appeals the grant of the appellees' motions for summary judgment.

The accident occurred at approximately 9:30 p.m. on July 18, 1985. At her deposition, the appellant described the incident as follows: "As I was getting out of my car I was walking towards the security guard to ask him [directions], and I fell, literally fell, in the middle of the sentence. . . . I fell off of an incline. . . . Right here is a curb that you can't see and it wasn't very well lit and there was no sign watch your step or . . . a rail or anything there. And I didn't see it. . . . I was just casually walking towards the security guard . . . and I was talking at the same time [asking directions] and I just walked and all of a sudden I was on the ground. . . ." She said that after she fell, she looked back and commented that they needed to install a light or something, "because . . . it [the drop-off area] blends right into the street. You can't see it."

The appellant conceded that she was aware of the existence of the ramp and that she could have seen the drop-off if she had "looked for it very closely," but she indicated that its location was not readily observable because the two levels appeared to blend together due to the poor lighting and the absence of any railings or warning markers. She further acknowledged that she had seen such drop-offs on ramps in parking lots before but maintained that there had normally been a guard rail or something to call attention to them. She stated that had the ledge "been marked or had there been brighter lighting, I would have noticed the curb. . . ."

In granting the appellees' motions for summary judgment, the trial court concluded that the appellant was negligent as a matter of law in not looking where she was walking and that, even if the lighting in the parking deck had been poor, she had assumed the danger because "the lack of light was as observable as the walkway." *Held*:

"[A]n invitee is not obliged to inspect the premises to discover latent defects nor even to observe patent defects. (Cits.)" *Amear v. Hall*, 164 Ga. App. 163, 167 (296 SE2d 611) (1982). "Looking continuously, without intermission, for defects in a floor is not required in all circumstances. (Cits.) 'What is a "reasonable lookout" depends on all the circumstances at the time and place.' (Cit.)" *Chotas v. J. P. Allen & Co.*, 113 Ga. App. 731, 733 (149 SE2d 527) (1966). See also *Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 238 (227 SE2d 336) (1976); *Fletcher v. Family Center*, 169 Ga. App. 376, 377 (312 SE2d 856) (1983).

Since the appellant was the respondent on motion for summary judgment and since she did not materially contradict herself, her testimony must be construed in her favor. See generally *Burnette Ford, Inc. v. Hayes*, 227 Ga. 551 (181 SE2d 866) (1971); *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 29-30 (343 SE2d 680) (1986). Although she conceded her obvious knowledge that she was parked on a ramp and further conceded that she would have been able to see the

ledge had she been looking down at it "very closely," she explained that her attention was focused on the security guard and that, due to the poor lighting and the lack of any guard rails or warning markers, the two levels appeared to blend together. Whether her failure to see the ledge constituted a lack of due care for her own safety under these circumstances and whether, if so, her negligence outweighed any possible negligence on the part of the appellees in failing to provide a guard rail, warning markers, and/or better lighting are issues of fact to be resolved by a jury. See *Ellington v. Tolar Constr. Co.*, supra, 237 Ga. at 237; *Wakefield v. A. R. Winter Co.*, 121 Ga. App. 259, 260 (174 SE2d 178) (1970). Accordingly, we hold that the trial court erred in granting the appellees' motions for summary judgment.

*Judgment reversed. Deen, P. J., McMurray, P. J., Carley and Benham, JJ., concur. Birdsong, C. J., Sognier, Pope, and Beasley, JJ., dissent.*

BIRDSONG, Chief Judge, dissenting.

The majority in this slip and fall case, recognizing that much of the plaintiff's testimony is equivocal, and citing *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680), construes that testimony in her favor to reverse the trial court's summary judgment to defendant. *Prophecy Corp.*, however, allows such equivocal testimony to be construed in the party's favor only if it be *reasonably explained*. Id., p. 30.

Where the plaintiff Pinkney has attempted to explain her statements further, she says a good deal which is *not* equivocal, and which does not "reasonably explain" her other testimony, but rather conclusively and unequivocally establishes her own fault in her fall.

She testified: "[I was aware] that there were inclines leading from one level [of the parking garage] to another . . . [and that I was] parking next to an incline or a ramp area where [I parked my] car." She testified further that she knew there was a ramp next to where she parked or an area with a ramp leading to a different level; she said, "I was right there at the ramp, but I didn't expect to step off that way. . . . [I] knew the ramp was there . . . I could see it . . . [but] I was not looking down [at the curb where I was walking]. . . . I was aware of the ramp. . . . [I] knew there was only a few feet from the position where [I parked my] car. . . . [B]ut I was not expecting . . . a step down curb. . . . I wasn't expecting something just like that. . . ."

To the question: "[E]ven though you knew the ramp was there, you didn't look down to see where you were going, to see what type of step off or ramp embankment there might have been," she responded: "No, I didn't." She testified that if she had looked down, she could not have seen the drop-off readily, but that she would have seen it

"[h]ad I looked for it."

To the question: "[Y]ou knew that the ramp was there when you pulled into your parking space, right," she replied, "I was aware of that, yes, I was." "And you knew it was only a few feet from your car when you pulled in?" "Yes, I saw the ramp there." "And had you looked down you could have seen the drop-off or the curb onto the rampway?" "I would have to look very closely. . . . [I] would have difficulty seeing it. . . . [I would] have to look very closely"; but she admitted that though its appearance blended in with the floor, she could have seen the drop-off, "if I had looked very closely."

She also admitted that she had seen a ledge drop-off on a ramp in a parking lot before, in several parking ramps, but there would be a guard rail or something to call your attention to the drop-off. In this garage, when she pulled into her parking space she had noticed the ramp to the left of her and could look down to the next ramp, and she was aware that she was "on levels," and had seen such a drop-off in other parking lots.

Clearly Pinkney was aware of the potential danger in parking where she did, and was in fact aware of the ramp. The fact alone that there was a flaw or defect, i.e., negligence, in the proprietor's failure to clearly mark the drop-off, does not render him automatically liable for an injury which occurred to one who was aware of the condition or knew it was nearby, but who simply failed to look. Almost any condition could become a hazard if persons fail to watch where they step. For other cases where plaintiffs simply were not careful to look where they were going, see *Gyles, Inc. v. Turner*, 184 Ga. App. 376, 377 (361 SE2d 538); *Taylor v. McDonald*, 183 Ga. App. 320 (359 SE2d 1); *Emory Univ. v. Duncan*, 182 Ga. App. 326 (355 SE2d 446); and *Herschel McDaniel Funeral Home v. Hines*, 124 Ga. App. 47 (183 SE2d 7).

Appellant's contention that even though she may have had knowledge of the drop-off, she did not have full appreciation of the risk involved, finds no favor. She has not alleged any infirmity of mind, nor has she suggested that any special talents would have been required of anyone to avoid stepping onto the drop-off. She simply was not looking where she stepped; this fact distinguishes this case from the cases she cites, *Burkhead v. American Legion*, 175 Ga. App. 56 (332 SE2d 311); and *Pippins v. Breman*, 152 Ga. App. 226 (262 SE2d 477). The defendants deserved summary judgment in this case.

I respectfully dissent. I am authorized to state that Judge Sognier, Judge Pope and Judge Beasley join in this dissent.

DECIDED OCTOBER 14, 1988 —
REHEARINGS DENIED NOVEMBER 7, 1988 —

*Ellerin & Williams, Irwin M. Ellerin, Osgood A. Williams*, for

appellant.

*Webb, Carlock, Copeland, Semler & Stair, Kent T. Stair, Douglas A. Wilde, Smith, Gambrell & Russell, Jane C. Carr,* for appellees.