A95A0561. YORK v. WINN-DIXIE ATLANTA, INC. et al.

(459 SE2d 470)

BEASLEY, Chief Judge.

Jimmy York appeals the trial court's order granting the motion for summary judgment of defendants Winn-Dixie Atlanta, Inc., and Southeast Dix Properties, Inc. York seeks to recover damages for the physical injuries he sustained as a result of the defendants' alleged negligence.

York was instructed by his employer to make deliveries on a certain route for another driver. He attempted to make a delivery to the Winn-Dixie warehouse, but the fish were rejected because they were not sufficiently packed in ice. At approximately 5:45 p.m., York's supervisor called the Winn-Dixie warehouse and obtained permission to have the fish redelivered. York was instructed to ice the fish and redeliver it immediately.

Upon their attempt to redeliver the fish, York and his fellow employee were kept waiting at the Winn-Dixie gate for one and one-half to two hours. Thereafter, he was instructed by a warehouse supervisor to unload his delivery at the banana dock. Both York and his fellow employee objected, as the height of the truck bed was seven to ten feet lower than the dock platform. During the earlier delivery attempt, York was sent to the main dock which was the appropriate height for his delivery truck. They complained to the warehouse supervisor about the potential danger of the dock height and the water standing on the corrugated metal dock lip. York deposed that the warehouse supervisor said, "I don't want to talk to you. . . . Just get the damn fish off the truck and leave." The warehouse supervisor also informed York that the main warehouse was closed so there was no other place to unload. While unloading, York's foot slipped, and he fell between the dock and the truck bed, injuring his knee when it struck the metal dock plate. After a few minutes, York and his coworker finished unloading the fish.

On appeal, York contends the court erred on the issue of assumption of the risk. "The general rule is that where one voluntarily and knowingly takes a risk involving imminent danger he is precluded from recovery by reason of another's negligence. The defense of assumption of risk requires: (1) that the plaintiff had some actual

knowledge of the danger; (2) that he understood and appreciated the risk therefrom, and (3) that he voluntarily exposed himself to such risk. Stated another way: The doctrine of the assumption of the risk of danger applies only where the plaintiff, with a full appreciation of the danger involved and without restriction from his freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct so that it can be said as a matter of law he has assumed all risk of injury." (Citations and punctuation omitted; emphasis supplied.) *General Tel. Co. of the Southeast v. Hiers*, 179 Ga. App. 105, 106 (2) (345 SE2d 652) (1986).

Exposure to the known risk must be voluntary, *Rainey v. City of East Point*, 173 Ga. App. 893, 895 (328 SE2d 567) (1985), the result of a deliberate choice. *Haynes v. Hoffman*, 164 Ga. App. 236, 237 (296 SE2d 216) (1982). As noted in the *Hiers* case, supra at 107 (2), "The Supreme Court [in *Osburn v. Pilgrim*, 246 Ga. 688, 695 (273 SE2d 118) (1980)] incorporated the meaning ascribed by Prosser [in the 4th edition]: ' "In its simplest and primary sense, assumption of risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone." [Cit.]' " Prosser and Keeton point out that consent is ordinarily "implied from the conduct of the plaintiff under the circumstances." Prosser and Keaton on Torts (5th ed.), p. 484; see Harper, James and Gray, The Law of Torts, Vol. 4, Ch. XXI.

This court has explained it similarly: "Assumption of risk . . . assumes that the actor, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not." *Whitehead v. Seymour*, 120 Ga. App. 25, 28 (169 SE2d 369) (1969); *Myers v. Boleman*, 151 Ga. App. 506, 509 (3) (260 SE2d 359) (1979).

It cannot be concluded as a matter of law, based on the undisputed evidence of record thus far, that the circumstances presented a practical choice. The question is whether the undisputed circumstances are such that the deliveryman was not so restricted that he was not coerced into unloading the fish and thus can be charged as a matter of law with assumption of the known risk.[1] An employee's "freedom of choice [can be] restricted by the circumstances under which he works and the coercion of seeking to remain employed." *Kitchens v. Winter Co. Builders*, 161 Ga. App. 701, 703 (289 SE2d 807) (1982). One of the circumstances is that York's alternative was to return to his employer's premises with the undelivered fish (a perish-

---

[1] This is not to be confused with avoidance of consequences, a defense which is found in the first sentence of OCGA § 51-11-7 and which is somewhat similar to contributory negligence. See Prosser and Keeton on Torts (5th ed.), pp. 458-461.

able product requiring special care and undelayed consumption) after having spent several hours trying to deliver it to the customer, who wanted it. Another circumstance was that by the time Winn-Dixie permitted the deliveryman to unload the fish, he had been working at least nine hours. He had taken the fish back to his employer because it was not sufficiently iced to suit the customer. His employer had called Winn-Dixie and then instructed him to re-ice it and deliver it immediately. He and a co-worker had cut the bands off the boxes, iced it, and put the fifty 50-pound boxes of fish on two pallets back on the truck.

There is evidence of coercion not only by the Winn-Dixie warehouse supervisor but also by his employer's order to deliver the fish. Coercion which prevents the application of the assumption of risk defense need not come solely from defendant, as it did in *Paulding Mem. Med. Center v. Messaadi*, 212 Ga. App. 759 (442 SE2d 875) (1994). The deliveryman York was presented with a Hobson's choice of facing the slippery high platform forced on him by the customer/defendant or facing his employer with the undelivered fish. We were inclined to agree with the employee in *Stodghill v. Fiat-Allis Constr. Machinery*, 163 Ga. App. 811, 813 (295 SE2d 183) (1982), "that because [the employee] was acting under orders from his employer, his conduct cannot be characterized as unreasonable as a matter of law."

Winn-Dixie and Southeast Dix have not shown as a matter of law that the deliveryman York assumed the risk of injury. Giving him the benefit of all reasonable doubts and favorable inferences as the respondent in their effort to obtain summary judgment, the conclusion is inevitable that the evidence is not indisputable, plain and palpable that he voluntarily consented to relieve those who, because they were in control of the premises, owed a duty of care towards him. *Kitchens*, supra at 702-703 (1). Jury issues remain. Compare *Tennison v. Lowndes-Echols Assn. for Retarded Citizens*, 209 Ga. App. 343 (433 SE2d 344) (1993).

The judgment of the trial court must be reversed.

*Judgment reversed. McMurray, P. J., Birdsong, P. J., Pope, P. J., Johnson, Smith and Ruffin, JJ., concur. Andrews and Blackburn, JJ., dissent.*

BLACKBURN, Judge, respectfully dissenting.

I respectfully dissent, because this case is distinguishable from *Kitchens v. Winter Co. Builders*, 161 Ga. App. 701 (289 SE2d 807) (1982), wherein we recognized that an employee's "freedom of choice [can be] restricted by the circumstances under which he works and the coercion of seeking to remain employed." Id. at 703. In the present case, York complained to the warehouse supervisor regarding the specific hazard which caused his injury. Yet, despite the hazards,

York proceeded to unload the fish. York's contention that he was coerced by the warehouse supervisor's order is without merit. The warehouse supervisor was not York's employer or even an agent of York's employer. York's freedom of choice was not so restricted by the circumstances or by the warehouse supervisor's order that it can be said that he did not voluntarily choose an obviously perilous course of conduct.

"Although issues of negligence . . . and assumption of the risk are ordinarily not susceptible to summary adjudication[,] where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion the issue of assumption of risk may be determined on summary judgment. The business invitee on private premises assumes the risk of danger of which he knows and fully comprehends, or which is sufficiently obvious." (Citations and punctuation omitted.) *Tennison v. Lowndes-Echols Assn. for Retarded Citizens*, 209 Ga. App. 343, 344 (433 SE2d 344) (1993).

The trial court correctly granted defendants' motion for summary judgment.

I am authorized to state that Judge Andrews joins in this dissent.

DECIDED JULY 13, 1995 — ▆▆▆▆▆▆▆▆

*Furlong & Franco, Walter W. Furlong, Randie H. Siegel*, for appellant.

*Fain, Major & Wiley, Gene A. Major, Darryl G. Haynes*, for appellees.

