A96A1677. ANDERSON et al. v. TURTON DEVELOPMENT, INC. et al.
(483 SE2d 597)

BEASLEY, Judge.

The Andersons appeal the grant of summary judgment to Choice Hotels International, Inc., franchisor of a Comfort Inn, and to Turton Development, Inc., operator of the inn, under the franchise agreement. The Andersons' action alleged that defendants' negligence caused Mrs. Anderson's slip and fall.

On the night of July 16, 1993, plaintiffs and their family checked

into the motel. They requested a ground-floor room to accommodate Mr. Anderson, who was in a wheelchair. Mrs. Anderson was driving him in his truck, which she parked in a handicap parking space as authorized by his handicap parking sticker. She also had handicap parking privileges as a result of a 1990 automobile accident. The following morning, she departed her room to load her belongings into the truck but slipped and fell on a handicap parking ramp while walking to the parking lot.

The ramp extends from the sidewalk in three sections. The middle section is rectangular and meets the sidewalk at 90-degree angles. The two outside sections are triangular. The triangular sections are flush with the sidewalk at the points where the triangular sections, the rectangular section, and the sidewalk meet. From those points, the triangular sections slope gradually downward along the curb of the sidewalk until they become even with the parking lot.

Mrs. Anderson knew the ramp was there but had not traversed it previously. She stepped from the sidewalk onto the ramp with her right leg. As she placed her left leg on the ground, it caught in the drop-off between the ramp and sidewalk, and she fell. She testified that the ramp appeared to be flush with the sidewalk and that this was the only handicap ramp she had ever used which had a drop-off not identified by yellow lines or contrasting colors. A hotel employee testified that she had tripped and almost fallen on the ramp and had seen other people do the same, all of which she reported to her supervisor.

Plaintiffs' expert, a professional engineer, testified that the handicap ramp fails to comply with American National Standards Institute (ANSI) standards for buildings and facilities for handicapped persons, in that it fails to have sufficient detectable warning textures for blind persons. It was his opinion that the ANSI standards were also violated because the color of the ramp, and the width and depth of the curb and flares, failed to give sufficient warning of any change in the elevation of the surface. The inn, constructed in 1990, was required to comply with ANSI standards under a state statute enacted to facilitate access to and use of facilities by physically handicapped and elderly persons. OCGA § 30-3-1 et seq. (Georgia Handicap Act).

The weather was very clear when Mrs. Anderson fell, and nothing obstructed her view of the ramp. She testified that as she was walking down the ramp, she was looking straight ahead. Although nothing prevented her from looking down, she did not do so as she placed her left foot on the ramp because she always looks ahead.

1. The grant of Turton's motion for summary judgment was based on such cases as *Gaydos v. Grupe Real Estate Investors*, 211 Ga. App. 811 (440 SE2d 545) (1994), and *Lamberson v. Norris*, 135

Ga. App. 647, 648 (2) (218 SE2d 658) (1975). *Lamberson,* and subsequent cases such as *Huntley Jiffy Stores v. Grigsby,* 208 Ga. App. 634 (431 SE2d 435) (1993), are authority for the proposition that changes in the elevation of walking surfaces which are openly visible to an invitee do not give rise to liability on the part of the property owner. *Gaydos* and the cases it cites hold that " '[i]t is common knowledge that small cracks, holes and uneven spots often develop in pavement; and it has been held that where there is nothing to obstruct or interfere with one's ability to see such a "static" defect, the owner or occupier of the premises is justified in assuming that a visitor will see it and realize the risk involved. (Cits.)' [Cit.] Broken or uneven pavement is a static condition which alone is not dangerous until someone steps on or in it. [Cit.]" *Gaydos,* supra at 813.

The court erred in granting Turton's motion.

A jury could find that Turton breached its duty to keep the premises safe for the plaintiff by negligently designing and constructing the handicap ramp in such a fashion as to make it appear to be even with the sidewalk. See generally *Piggly Wiggly Southern v. Brown,* 219 Ga. App. 614, 615 (468 SE2d 387) (1995).

Construing the evidence most strongly against defendants as movants for summary judgment, *Sheriff's Best Buy v. Davis,* 215 Ga. App. 290, 291 (450 SE2d 319) (1994), a jury could also find that Mrs. Anderson, who was carrying her personal belongings from her room to her vehicle at the time of the accident, exercised reasonable care for her own safety by looking straight ahead and would have seen the drop-off but for the defective design. An invitee is not required to look for defects continuously and without interruption always. See *Piggly Wiggly Southern v. Brown,* supra at 617; *J. H. Harvey Co. v. Edwards,* 219 Ga. App. 697, 698 (466 SE2d 246) (1995). " 'What is "a reasonable lookout" depends on all the circumstances at the time and place. . . .' " (Citations omitted.) Id. Whether plaintiff's failure to see the drop-off "constituted a lack of due care for her own safety under these circumstances and whether, if so, her negligence outweighed any possible negligence on the part of the [defendants] in failing to provide a . . . warning . . . are issues of fact to be resolved by a jury. [Cits.]" *Pinkney v. VMS Realty,* 189 Ga. App. 177, 179 (375 SE2d 90) (1988); compare *Froman v. George L. Smith, Ga. World Congress Auth.,* 197 Ga. App. 338 (398 SE2d 413) (1990).

Given the above, plus evidence that other people had also tripped on the ramp, and evidence that the design of the handicap ramp was defective, "we cannot say (as a matter of law) that [the drop-off] was such an open and obvious danger that the average [person], in the exercise of ordinary care, would have observed the [defect] and avoided it. [Cit.]" *Brown,* supra at 618. Different is the case of *Manley v. Gwinnett Place Assoc., L.P.,* 216 Ga. App. 379, 380

(2) (454 SE2d 577) (1995). Manley claimed that the slope of a handicap ramp was too steep, but her expert conceded the slope of the ramp was "obvious"; the ramp was painted yellow. Another case with evidence producing a different summary judgment result is *Sullivan v. Quisc, Inc.*, 207 Ga. App. 114 (427 SE2d 86) (1993). Plaintiff Sullivan's own expert witness illustrated that the allegedly hazardous condition created by the sloped threshold of a door was open and obvious, and a "watch your step" sign was posted to the right of the door.

"Such questions of negligence and diligence, including the related issues of lack of ordinary care for one's own safety or lack of ordinary care in failing to see or observe the negligence of another, are ordinarily for a jury. [Cit.]" *Brown*, supra at 618. The evidence is not so plain, palpable, and undisputable as to support the conclusion that, as a matter of law, the plaintiff is precluded from recovering because her own negligence preponderated in causing her injury. See generally id. "[T]here remains a jury question as to whether [plaintiff] ' "use(d) her eyesight for the purpose of determining any discernible obstruction or defect in her path." . . . (Cit.)' [Cits.]" *Allen v. Roscoe Weston Motels Ga.*, 220 Ga. App. 402, 404 (469 SE2d 492) (1996).

We reject plaintiffs' argument that the design constituted negligence per se on grounds that ANSI standards and thus the Georgia Handicap Act were violated. Although *Manley*, supra, noted that no legal requirement existed mandating compliance with ANSI standards, it did not take into consideration the Georgia Handicap Act. Compare *Watts v. Jaffs*, 216 Ga. App. 565 (455 SE2d 328) (1995). Nevertheless, Mrs. Anderson, who was 57 years old at the time of the accident in 1993, testified that she had been issued a four-year handicap parking permit in 1990 as a result of an automobile accident in which she sustained injuries from which she had completely recovered at the time of the present accident. Thus, she was not handicapped or elderly. " ' "[I]n order for the violation of some statutory duty to be negligence per se, the person claiming it as such must be within the class for whose benefit the statute was passed. . . ." ' [Cit.]" *Spivey v. Sellers*, 185 Ga. App. 241, 244 (363 SE2d 856) (1987).

2. Although franchisee Turton was not entitled to summary judgment, franchisor Choice was.

(a) Plaintiffs first seek to hold Choice vicariously liable under an actual agency theory.

" '(A) franchise contract under which one operates a type of business on a royalty basis does not create an agency or a partnership relationship.' [Cit.] . . . ' . . . [I]n order to impose liability on the franchisor for the (obligations) of the franchisee, it must be shown that: (a) the franchisor has by some act or conduct obligated itself to pay the debts of the franchisee; (cit.) or (b) the franchisee is not a

franchisee in fact but a mere agent or "alter ego" of the franchisor. (Cit.)' [Cit.]" *McGuire v. Radisson Hotels Intl.*, 209 Ga. App. 740, 742 (1) (435 SE2d 51) (1993).

Plaintiffs argue that an actual agency between Choice and Turton was created because the franchise agreement, along with certain rules and regulations that Turton was obligated to follow, provided Choice with the ability to control the time, manner, and method of Turton's business.

" 'Under Georgia law, "(t)he relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." (Cit.) The historical test applied by Georgia courts has been "whether the contract gives, or the employer assumes, the right to control the time and manner of executing the work, as distinguished from the right merely to require results in conformity to the contract." (Cit.)' [Cit.] However, '(t)he need for controls over the use of a trade name, in a franchise agreement authorizing such use, has generally been recognized. (Cits.)' [Cit.] Thus, 'a franchisor is faced with the problem of exercising sufficient control over a franchisee to protect the franchisor's national identity and professional reputation, while at the same time foregoing such a degree of control that would make it vicariously liable for the acts of the franchisee and its employees. (Cit.)' [Cit.]" *McGuire*, supra at 742.

Plaintiffs rely on provisions in the franchise agreement requiring that the inn contain a specified number of rooms, that the form and content of local advertising conform to standards prescribed by Choice, that Turton retain on the premises records and data relating to room rentals and revenue for examination and audit by Choice, and that Turton permit Choice to inspect the inn at all reasonable times.

These terms of the franchise agreement, rules and regulations, would not support a finding that Choice had the right to exercise such control as to make it vicariously liable for the acts of its franchisee Turton in maintaining the premises in a safe condition. The agreement sets forth the terms and conditions under which Turton may be licensed to operate a hotel or motel using the name "Comfort Inn," and the rules and regulations impose various building, construction, and operational requirements, "not to permit [Choice] to direct or control the time, manner and method of performance of the daily operations of the franchise but as a means of achieving a certain level of quality and uniformity within [its] system." *McGuire*, supra at 742. The franchise agreement provides that no agency relationship exists between Choice and the franchisee and that nothing contained in the agreement would take away from the franchisee the right to exercise "ordinary business control" to the extent consistent

with the specific terms of the agreement. Therefore, it is immaterial that the agreement was subject to termination if the inn were operated in a manner which violated the rules and regulations.

(b) Plaintiffs alternatively seek to hold Choice vicariously liable under an apparent agency theory.

" 'The essence of the doctrine (of apparent or ostensible agency) is that one represents that another is one's agent so that plaintiff justifiably relies on the care or skill of the apparent agent whose negligence causes the injury. It is not enough that plaintiff simply believe there is an agency relationship. There is an objective standard. The apparent principal must represent or hold out the apparent agent. Then, too, justifiable reliance must lead to the injury.' [Cit.]" *Watson v. Howard Johnson Franchise Systems*, 216 Ga. App. 237, 238 (453 SE2d 758) (1995).

Although that is the law, *Watson* is distinguishable on the facts. There was evidence that the franchisee, with the knowledge of the franchisor, held itself out as being operated by the franchisor. In this case, there is only evidence that Turton failed to notify guests through signs or written material that it was independently operated.

(c) Plaintiffs also argue that Choice is directly liable because of its own negligence in the construction, design, and maintenance of the handicap ramps.

The rules and regulations required the construction of handicap parking ramps and provided a suggested design, but they were in fact designed, built, and maintained by Turton. Although there is evidence that they met Choice's requirements, the evidence is that the drop-off from the sidewalk to the parking lot, and the lack of warning, were Turton's design and not Choice's.

*Judgment affirmed in part and reversed in part. Pope, P. J., Johnson, Blackburn and Smith, JJ., concur. Andrews, C. J., Birdsong, P. J., and Ruffin, J., dissent. McMurray, P. J., disqualified.*

BIRDSONG, Presiding Judge, dissenting.

I believe the trial court was correct when it found the ramp to be an open and obvious static condition and that Mrs. Anderson failed to exercise ordinary care for her own safety.

The day was clear with a sunny sky and dry conditions. Appellant admits nothing prevented her from seeing the ramp or slope and there were no distractions. This Court held in *Sullivan v. Quisc, Inc.*, 207 Ga. App. 114 (427 SE2d 86) that even if a threshold slope created a hazardous condition, it was an *open and obvious static condition that the plaintiff could have avoided in the exercise of ordinary care.*

This case is controlled by *Manley v. Gwinnett Place Assoc.*, 216 Ga. App. 379 (454 SE2d 577).

I respectfully dissent. I am authorized to state that Chief Judge Andrews and Judge Ruffin join in this dissent.

DECIDED FEBRUARY 13, 1997 —
RECONSIDERATION DENIED MARCH 7, 1997 — 

*Gorby & Reeves, Michael J. Gorby, Amanda R. H. Burri,* for appellants.
*Neal C. Scott, Todd A. Schweber,* for appellees.