## A08A2331. CREEDEN et al. v. FUENTES.

(673 SE2d 611)

MIKELL, Judge.

In this lawsuit, Javier Basillio Fuentes, a construction worker, alleges that KBC Constructors, LLC d/b/a Highland Custom Homes ("Highland") and its owner, officer, and project manager, Bill Creeden (collectively, the "defendants"), are liable for injuries Fuentes suffered when he fell through an elevator shaft at a construction site. The defendants filed motions for summary judgment. The trial court denied the motions and issued a certificate of immediate review. We granted the defendants' application for interlocutory appeal and reverse, finding that the exclusive remedy provision of the Workers' Compensation Act, OCGA § 34-9-11, bars Fuentes's claim.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

So viewed, the record shows that Highland is a Georgia corporation that was formed in 2000 to build residential homes. On March 22, 2004, Highland purchased several lots in the Lynwood Park subdivision of DeKalb County, including 3220 Lynwood Drive. The next day, Highland entered into a design contract with Jacques DeGaule to build a home to his specifications at 3220 Lynwood Drive. The design fee was $2,000. On August 31, 2004, Highland and DeGaule signed a purchase and sale agreement for the property providing for transfer of title from Highland to DeGaule when the house was substantially completed. DeGaule paid $33,171 in earnest money to Highland when the agreement was signed. The agreement also provided for the specific design of the house, which included a swimming pool and an elevator that stopped at each floor, including the basement.

After construction was underway on the house, Highland con-

---

[1] (Footnote omitted.) *Lawson v. Entech Enterprises*, 294 Ga. App. 305 (669 SE2d 211) (2008).

tracted with Rich Drywall, Inc. ("Rich Drywall"), in November 2004 to perform drywall installation in the house. Rich Drywall in turn hired different subcontractors to do each of the three phases of the drywall work, including hanging, finishing or taping, and sanding. Rich Drywall subcontracted with Daniel Rodriguez to perform the final sanding phase, and Rodriguez hired Fuentes as part of the sanding crew. On November 24, 2004, his first day on the job, Fuentes noted that there was an elevator shaft in the house and that it went from the basement up to the third floor. Fuentes was able to see inside the elevator shaft to know that the drywall was not taped and could not be sanded that day. According to Fuentes, there were no barricades blocking the elevator shaft. Fuentes deposed that he knew that he would get hurt if he went into the elevator shaft, but explained that he would not necessarily know if a closed door was an elevator or a closet since he was not familiar with the layout of the home. Fuentes completed his work on November 24, 2004, without incident and then returned to the site two days later to complete sanding. As he was sanding the ceiling on the second floor, he noticed an area in the elevator shaft on the third floor that needed sanding. Fuentes went up to the third floor and opened what he thought was a closet door. When he entered, he fell down the elevator shaft and was seriously injured.

Fuentes received workers' compensation benefits from Rich Drywall, his employer, but subsequently sued Highland and Creeden, alleging that their negligence contributed to his injury. Defendants moved for summary judgment alleging, inter alia, that as Fuentes' statutory employer, they were entitled to tort immunity under OCGA § 34-9-8, so that Fuentes's exclusive remedy was under the Workers' Compensation Act, OCGA § 34-9-11. The trial court noted that an owner who is in possession or control of the premises is generally not a statutory employer under OCGA § 34-9-8, and that the isolated situation where an owner can attain the status of statutory employer is where it is serving as contractor for another entity. The court denied defendants' motions, ruling that although Highland had a contract with DeGaule for the construction of the home, it retained sole ownership of the property and the work was being done for Highland's own benefit.

1. Defendants contend that the trial court erred in denying their motions for summary judgment because as both the owner of the property and the general contractor responsible for building the home, Highland was Fuentes's statutory employer under OCGA § 34-9-8, and, therefore, defendants are immune from tort liability

under OCGA § 34-9-11.[2] Fuentes argues that Highland is liable in tort because it was not his statutory employer: Highland was the sole owner of the property, oversaw the subcontractors, and performed work on the property, solely for its own benefit. We agree with defendants.

The statutory employer doctrine is based on OCGA § 34-9-8, which provides that

> (a) [a] principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer. . . . (d) [t]his Code section shall apply only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under his control or management.

In *Manning v. Ga. Power Co.*,[3] our Supreme Court held that OCGA § 34-9-8 does not extend beyond an actual principal contractor:

> Owners or entities merely in possession or control of the premises would not be subject to workers' compensation liability as statutory employers, except in the isolated situation where the party also serves as a contractor for yet another entity and hires another contractor to perform the work on the premises.[4]

---

[2] OCGA § 34-9-11 provides, in relevant part:
The rights and the remedies granted to an employee by this chapter shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service, or death; provided, however, that no employee shall be deprived of any right to bring an action against any third-party tort-feasor, other than an employee of the same employer or any person who, pursuant to a contract or agreement with an employer, provides workers' compensation benefits to an injured employee, notwithstanding the fact that no common-law master-servant relationship or contract of employment exists between the injured employee and the person providing the benefits, and other than a construction design professional who is retained to perform professional services on or in conjunction with a construction project on which the employee was working when injured.
OCGA § 34-9-11 (a).

[3] 252 Ga. 404 (314 SE2d 432) (1984).

[4] (Punctuation omitted.) Id. at 406, citing *Modlin v. Black & Decker Mfg. Co.*, 170 Ga. App. 477, 478-479 (317 SE2d 255) (1984).

In *Yoho v. Ringier of America*,[5] our Supreme Court held that an owner who is merely in possession or control of the premises is not subject to workers' compensation liability as a statutory employer and is not immune from tort liability.[6] In so holding, the Court reaffirmed *Manning*, and reiterated that under that case and *Evans v. Hawkins*,[7] "only a 'contractor' can be a statutory employer and an 'owner' cannot be a 'contractor' if the contractual obligation of performance is owed to, rather than by, him.'"[8] However, an "owner" can attain "contractor" status under OCGA § 34-9-8 (a) "in the isolated situation where he also serves as a *contractor for yet another entity* and hires another contractor to perform the work on the premises."[9] In *Yoho*, the court found that Ringier did not serve as a contractor for anyone else and could not contract with itself to do something for its own benefit.[10] Accordingly, Ringier was not a statutory employer, and, therefore, not immune from liability for appellant's tort claims.[11]

This Court, however, reached a contrary result in *Rickets v. Tri-State Systems*.[12] In that case, the plaintiff's employer, Whittle Sign Company, contracted with Tri-State Systems, Inc., the owner of an outdoor advertising sign furnished under contract with Days Inn, for painting services. While repainting the sign, plaintiff was injured by an electric shock that caused him to fall from the sign platform. He sued Tri-State, which alleged that it was the statutory employer, and, therefore, immune from liability. Plaintiff countered that Tri-State was merely the owner of the sign and not his statutory employer.[13] This Court disagreed, finding that Tri-State did

> not occupy the status of the mere passive owner of the premises where [plaintiff] was injured. [Tri-State's] sign was "under contract" to Days Inn and pursuant to that

[5] 263 Ga. 338 (434 SE2d 57) (1993).

[6] Id. at 341.

[7] 114 Ga. App. 120, 123-124 (150 SE2d 324) (1966).

[8] *Yoho*, supra at 341.

[9] (Punctuation omitted; emphasis in original.) Id., citing *Manning*, supra at 406.

[10] Id. at 339-340.

[11] Id. at 343. See also *Holton v. Ga. Power Co.*, 228 Ga. App. 135, 136 (491 SE2d 207) (1997) (where majority owner of power plant was also obligated by agreement to other owners for plant's maintenance, it became injured worker's statutory employer, immune from tort liability). Compare *Murph v. Maynard Fixturecraft*, 252 Ga. App. 483, 484 (1) (555 SE2d 845) (2001) (owner of premises could not be deemed statutory employer where there was no evidence that it was functioning in dual role of owner and contractor; on date of accident, owner had not executed franchise agreement with the franchise company and, therefore, no contractual obligations existed between the two parties).

[12] 177 Ga. App. 509 (339 SE2d 732) (1986).

[13] Id.

contract, [Tri-State] had certain continuing obligations to Days Inn with regard to the sign that it owned. Thus, notwithstanding its ownership of the sign, appellee was, as to Days Inn, a "contractor." "Contractor" is defined as one who contracts to perform certain work, such as the furnishing of goods and service, for another. Since the contract with Whittle was entered into in specific furtherance of appellee's contractual obligation to Days Inn rather than its ownership interest, appellee would be the "principal" contractor as to those services. [Tri-State] owed the primary obligation to Days Inn and the obligation, in turn, was owed to [Tri-State] by Whittle. [Plaintiff], an employee of Whittle, was injured while performing these obligations. It follows that the instant case does come within the exception recognized in *Modlin* and in *Manning*. OCGA § 34-9-8 applies to contractors and not owners, *unless the owner also serves as a contractor*.[14]

Here, although Highland retained ownership of the property, it was working at the behest of DeGaule, who had specifically contracted with Highland to build his home according to his specifications. Thus, even though Highland was the owner, it was also acting as a contractor for DeGaule, performing work not only for its own benefit but expressly for the benefit of DeGaule. Like Tri-State, Highland "had certain continuing obligations to [DeGaule] with regard to the [property] that it owned." Accordingly, the trial court erred in holding that Highland was not entitled to statutory employer status and the resulting tort immunity afforded by the exclusive remedy provision of the Workers' Compensation Act.

2. Defendants further contend that as the alter ego of Highland, Creeden is also entitled to immunity under OCGA § 34-9-11. Fuentes does not dispute this contention, and we also agree.[15]

3. In light of our holding, we need not consider defendants' remaining enumerations of error; namely, that the trial court's denial of summary judgment should be reversed because (a) Highland was not in possession of the premises at the time of the accident;

---

[14] (Punctuation omitted; emphasis in original.) Id. at 510 (1).

[15] See *Betts v. MedCross Imaging Center*, 246 Ga. App. 873, 877 (2) (542 SE2d 611) (2000), citing *Vaughn v. Jernigan*, 144 Ga. App. 745, 746 (242 SE2d 482) (1978). Accord *Chambers v. Gibson*, 145 Ga. App. 27, 28 (243 SE2d 309) (1978) (exclusive remedy provision of the Workers' Compensation Act applies to employer's president, director and CEO, as alter ego); *Cunningham v. Heard*, 134 Ga. App. 276, 277-278 (214 SE2d 190) (1975) (affirming summary judgment in favor of defendant-president as alter ego of employer in plaintiff's action for damages).

(b) Fuentes had actual knowledge of the elevator shaft; and (c) Fuenetes's own negligence caused his injury.

*Judgment reversed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 13, 2009.

*Carlock, Copeland & Stair, Clare Michaud, David F. Root*, for appellants.

*Devlin & Robinson, Marvin A. Devlin, Jacob S. Eby, Moore, Ingram, Johnson & Steele, Jeffrey A. Daxe, Debra A. Rickles*, for appellee.