### A09A2398. BAKER et al. v. HARCON, INC.

(694 SE2d 673)

BERNES, Judge.

In this lawsuit, H. R. Baker IV, a construction supervisor, sued Harcon, Inc., a subcontractor working on the same construction project, after being injured on the construction site as a result of the alleged negligence of Harcon. The trial court granted summary judgment to Harcon after concluding that Baker failed to exercise ordinary care for his own safety and otherwise assumed the risk of his injury. We conclude that the alleged conduct of the parties raises genuine issues of material facts necessary for jury resolution, rendering this case inappropriate for summary adjudication; we therefore reverse.

Following the grant of a motion for summary judgment, we conduct a de novo review of the evidence. Creeden v. Fuentes, 296 Ga. App. 96 (673 SE2d 611) (2009). In so doing, we view the evidence and all reasonable conclusions and inferences drawn therefrom in the light most favorable to the nonmovant. Id. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.; OCGA § 9-11-56 (c).

So construed, the evidence shows that in January 2006, Baker was working as an assistant construction supervisor for his employer, Foundation Contractors, Inc., a subcontractor on a large construction project known as the West Village Building Project. Harcon was also a subcontractor on the project. Both companies worked under the overall supervision of the general contractor, Hardin Construction Company, LLC. The project consisted of seven mixed-use buildings, numbered 1000 through 7000.

Foundation oversaw all concrete construction on the project. Harcon built and erected wooden "forms" into which Foundation poured the concrete. Once Foundation had poured concrete into the

forms, the concrete would then be given several days to cure. After the concrete had properly cured, Harcon would disassemble the forms and remove them from the workplace, leaving in place the remaining concrete structure.

The accident in question occurred during construction of the second level of Building 4000, a 10,000-square-foot concrete floor. To construct this floor, Harcon erected an elevated wooden deck to which temporary guardrails were attached.[1] Harcon then surrounded the wooden deck with "edge forms." Foundation employees showed Harcon areas in the concrete floor that were to be left open to accommodate such things as stairwells and trash chutes. Harcon then built additional wooden edge forms around the desired openings identified by Foundation so that holes would remain when Foundation poured the concrete floor. After the form assembly had been completed, Foundation poured the concrete onto the wooden deck.

Baker personally informed Harcon that Building 4000 was to have a trash chute, and showed Harcon its desired location. Building 4000 was at least the fifth building in the project on which Baker had worked, but the only one in which he worked that had a trash chute.[2]

After Foundation poured the concrete for the second level, Baker and his crew left Building 4000 to commence work on another building in the project. Approximately four to six days later, when the concrete on the second level of Building 4000 had cured, Harcon disassembled the wooden forms, and removed the wooden deck and guardrails. This disassembly included removal of a wooden sheet which underlay the area set out for the trash chute so that, for the first time, there was an opening in the floor.

After the disassembly occurred, Hardin, the general contractor, ordered Baker "to take a group of workers from any crew [he] could find" to return to the second floor platform and remove remaining debris in preparation for the framer's arrival the following day. Baker, concerned about exposing his workers to the falling hazard, reluctantly agreed; he thereafter gathered several men from his own crew and a few Harcon workers to accompany him to the concrete platform. Baker implored the men to remain within ten feet from the edge of the platform and supplied them with rakes to reach items

---

[1] Employees working on the second floor deck also employed a fall restraint system that included lifelines.

[2] One other building in the project, Building 7000, was also equipped with a trash chute. Baker had been in that building, but was not involved in its construction. Nonetheless, there is evidence that Baker overheard a Foundation supervisor instruct Harcon to properly barricade the trash chute opening on that building once it was exposed, after which Harcon erected a warning barrier consisting of several pieces of wood vertically protruding from the hole and marked with yellow warning tape.

that may be within that forbidden area, then accompanied them to ensure that they respected the perimeter and otherwise took adequate safety precautions.

As Baker walked the platform supervising the men, he and a second worker observed what they believed to be a pile of debris, consisting of several small pieces of wood on top of a larger piece of scrap plywood that contained cement smears and saw cuts. As the other worker picked up the smaller pieces of wood, Baker bent over to pick up the larger piece. Baker walked forward in an attempt to stand the wood upright but, due to the size of the plywood, he could not see the surface of the concrete platform below. As Baker stepped forward, he fell through the trash chute hole approximately 20 feet to the ground below, resulting in severe injuries which have caused him to be totally and permanently disabled.

Baker thereafter filed the instant lawsuit seeking compensatory and punitive damages against Harcon.[3] Baker alleged that his injury resulted from Harcon's negligent failure to adequately warn of and/or guard against the danger created by the hole that it exposed in the concrete platform.[4] Harcon moved for summary judgment, contending that Baker failed to exercise ordinary care for his own safety and otherwise assumed the risk of his injury. The trial court granted Harcon's motion and this appeal followed.

Baker contends that the trial court erred in granting summary judgment to Harcon. First, Baker argues that the trial court erroneously refused to consider certain statements that he made in an affidavit which the trial court deemed to be contradictory to testimony given during his deposition. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28-30 (1) (343 SE2d 680) (1986). Second, Baker asserts that the trial court erred in concluding that he was precluded from recovering damages from Harcon because he failed to exercise ordinary care for his own safety and/or assumed the risk of his injury.

Pretermitting whether or not the trial court erred in excluding the affidavit testimony, we conclude that — even in the absence of that testimony — the record presents a jury question as to Harcon's liability, rendering the trial court's grant of summary judgment in favor of Harcon improper.

(a) *Exercise of Ordinary Care.* Unquestionably, a building subcontractor has a duty to exercise ordinary care not to cause injuries

---

[3] Baker also sued Hardin and Risk Management Partners, LLC, but they are not party to the instant appeal.

[4] The lawsuit also included a loss of consortium claim by Baker's wife, Sheila Joan Baker.

to others engaged in work on the same premises. *Doke v. Dover Elevator Co.*, 152 Ga. App. 434, 436 (263 SE2d 209) (1979).

> Where several persons are engaged in the same work, in which the negligent or unskillful performance of his part by one may cause danger to the others, in which each must necessarily depend for his safety upon the good faith, skill and prudence of each of the others in doing his part of the work, then it is the duty of each to the others engaged in the work to exercise the care and skill ordinarily employed by prudent men in similar circumstances.

(Citation and punctuation omitted.) Id. See OCGA § 51-1-6; *Ragsdale Heating &c. v. Terrell*, 245 Ga. App. 866, 867 (539 SE2d 199) (2000); *Soucy v. Alexander*, 172 Ga. App. 501, 502 (323 SE2d 662) (1984). But "a breach of such duty will not give rise to liability to a plaintiff who could have avoided injury to himself by the exercise of ordinary care." *Soucy*, 172 Ga. App. at 502. See OCGA § 51-11-7. Furthermore, one cannot recover for another's failure to correct a patent defect where such party had an equal opportunity to discover the defect or equal knowledge of its existence. See *Morris v. Barnet*, 191 Ga. App. 382, 383 (381 SE2d 597) (1989); *Soucy*, 172 Ga. App. at 502. Issues of negligence, contributory negligence, and the lack of ordinary care for one's own safety should ordinarily be reserved for the jury, the only exception being "where the evidence is plain, palpable, and undisputable." (Citation omitted.) *Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 237 (II) (227 SE2d 336) (1976). See *Gen. Manufactured Housing v. Murray*, 233 Ga. App. 382, 384 (1) (504 SE2d 220) (1998).

Here, the record is undisputed that, once the trash chute hole was exposed following the removal of the underlying wooden deck, the act of covering the hole with nothing more than an unsecured piece of discarded plywood violated both federal Occupational Safety and Health Administration ("OSHA") regulations as well as industry standards. See 29 CFR § 1910.23 (a) (3); *Cardin v. Telfair Acres of Lowndes County*, 195 Ga. App. 449, 450 (2) (393 SE2d 731) (1990) ("[OSHA regulations] should be admissible not merely as 'standards' of performance, but as evidence of legal duty, violation of which may give a cause of action under OCGA § 51-1-6."). And while there are conflicts in the evidence, there was some evidence that it was Harcon that failed to securely cover and guard the exposed opening after removing the underlying wooden deck, and further that it was Harcon's employees who threw the discarded wood over the hole. This evidence was sufficient to create a jury question as to Harcon's negligence.

Harcon nonetheless contends that it is absolved of liability because Baker knew of the existence of the chute opening and failed to exercise ordinary care for his own safety by not looking under the board prior to stepping forward. Again, we disagree.

(i) "The superior/equal knowledge rule presumes the plaintiff, knowing of the danger, could have avoided the consequences of defendant's negligence with the exercise of ordinary care." (Citation and punctuation omitted.) *Powley v. Precision Plumbing Co.*, 222 Ga. App. 848, 850 (4) (476 SE2d 777) (1996). In support of its argument, Harcon relies upon Baker's admission that he had instructed Harcon as to the desired location of the trash chute.

That admission, however, is not determinative under the facts of this case. The evidence shows that Baker was working on at least five other buildings in addition to the one in question. Of those, Building 4000 was the only one with a trash chute. Although Baker may have instructed Harcon about the desired location of the trash chute on the 10,000-square-foot platform in the weeks prior to the accident[5] and before the concrete platform had been constructed, Baker has asserted that "[t]he appearance of the floor at the time [he] marked the trash chute location and dimensions on the plywood form was totally different from the appearance after the concrete form had been poured." Of course, Harcon's position begs the question of whether Baker would have better recalled the existence of the trash chute had it been properly covered and/or marked. Regardless, the issue of whether Baker's knowledge was sufficient to absolve Harcon of liability is an issue for jury resolution. See *Gen. Manufactured Housing*, 233 Ga. App. at 383-384 (1). See also *Powley*, 222 Ga. App. at 850-851 (4); *Hicks v. Walker*, 262 Ga. App. 216, 219-220 (585 SE2d 83) (2003). Compare *Morris*, 191 Ga. App. at 383.

(ii) Furthermore, a jury question has been presented as to whether Baker failed to exercise ordinary care for his own safety. He and his crew were deliberately sent up onto the concrete platform in order to clean up debris left behind by Harcon. Not only did the unsecured plywood lying over the chute opening prevent Baker from seeing the opening, but the condition of the plywood and the fact that it was buried under additional debris arguably lent itself to the conclusion that it was, indeed, nothing more than rubbish. Cf. *American Multi-Cinema v. Brown*, 285 Ga. 442, 445-448 (3) (679

---

[5] The record shows that the process took a minimum of two weeks after the location of the trash chute had been decided and the edge forms had been built; following Harcon's installation of the decking and the forms, it took another two or three days for a different subcontractor to install rebar, then an additional day for Foundation to pour the concrete, four to six days for the concrete to cure, another day to remove the forms, and another four to six days to remove the decking.

SE2d 25) (2009) (a jury question existed as to whether the method employed by the defendant to warn patrons of one hazard actually had the inherent potential to expose them to a different one). Under any circumstances, the extent to which Baker's conduct contributed to his fall, if at all, is certainly not "plain, palpable, and indisputable," rendering this issue inappropriate for summary adjudication. See *Ellington*, 237 Ga. at 237 (III); *Britton v. Farmer*, 283 Ga. App. 733, 735-736 (1) (642 SE2d 415) (2007); *Ragsdale Heating*, 245 Ga. App. at 866-867; *Pinkney v. VMS Realty*, 189 Ga. App. 177, 178-179 (375 SE2d 90) (1988); *Doke*, 152 Ga. App. at 436-437.

(b) *Assumption of the Risk*. Harcon further argues that Baker assumed the risk of his injury by returning to the second floor platform without fall protection and stepping forward after lifting the board without first looking under it.

> The general rule is that where one voluntarily and knowingly takes a risk involving imminent danger[,] he is precluded from recovery by reason of another's negligence. The defense of assumption of risk requires: (1) that the plaintiff had some actual knowledge of the danger; (2) that he understood and appreciated the risk therefrom, and (3) that he voluntarily exposed himself to such risk. Stated another way: The doctrine of the assumption of the risk of danger applies only where the plaintiff, with a full appreciation of the danger involved and without restriction from his freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct so that it can be said as a matter of law he has assumed all risk of injury.

(Citation and punctuation omitted.) *York v. Winn-Dixie Atlanta*, 217 Ga. App. 839, 839-840 (459 SE2d 470) (1995). Absolutely fundamental to any assumption of the risk analysis is knowledge of the risk involved, which must be both actual and subjective — "[t]he knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury." (Footnote omitted.) *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996). Significantly, a plaintiff's comprehension or general understanding of nonspecific risks that might be associated with the activity at issue is not sufficient. Id. Rather, "[i]n its simplest and primary sense, assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave

undone." (Footnote omitted.) Id. And finally, the doctrine assumes that the actor has voluntarily chosen to engage in the course of action, without coercion of circumstances, "while exercising a free choice as to whether to engage in the act or not." *York*, 217 Ga. App. at 840.

Harcon's argument that Baker assumed the risk of his fall fails on summary judgment for at least two reasons. First, although Baker was obviously aware that he and his crew were exposed to a fall risk by returning to the second floor platform without safety devices, it is significantly less clear that he fully appreciated the risk which ultimately caused his injury. Evidence that the discarded plywood covering the trash chute opening not only obscured Baker's view of the hole, but was also placed there in violation of OSHA regulations and industry standards, renders it a jury question whether Baker lifted the board and stepped forward with an actual and subjective appreciation of the specific risk involved. This is particularly true in light of the fact that Baker was reluctantly compelled onto the platform in order to discard the remaining debris, some of which was piled on top of the plywood at issue. And while a jury might ultimately attribute some degree of fault to Baker,

> [s]ignificant is the distinction between assumption of risk and contributory or comparative negligence. Assumption of risk means the plaintiff is fully aware of the dangerous defect or condition caused by defendant's negligence but freely chooses to proceed nonetheless. Contributory or comparative negligence means the plaintiff, though exposing himself to danger, nevertheless is unaware of the defendant's negligence and thus expects the defendant to act or to have acted with reasonable care.

*Hillman v. Carlton Co.*, 240 Ga. App. 432, 435 (1) (522 SE2d 681) (1999). This case undeniably falls into the latter category. See *Vaughn*, 266 Ga. at 864-865 (1); *Benefield v. Pep Boys &c., Inc.*, 291 Ga. App. 79, 80-82 (661 SE2d 214) (2008); *Hillman*, 240 Ga. App. at 433-435 (1).[6]

Second, there is evidence from which the jury could conclude that, based upon Hardin's act of ordering Baker and his crew up to the second floor platform, Baker did not make a deliberate choice to engage in obviously perilous conduct "without restriction from his

---

[6] We disapprove *Englehart v. OKI America*, 209 Ga. App. 151, 153-154 (2) (433 SE2d 331) (1993), to the extent that it suggests that any time an experienced construction worker takes a step on a job site without first looking, he has failed to exercise reasonable care for his own safety as a matter of law and/or assumed the risk of any resulting injury as a matter of law.

freedom of choice either by the circumstances or by coercion." (Citation omitted.) *York*, 217 Ga. App. at 840 (1). See *Kitchens v. Winter Co. Builders*, 161 Ga. App. 701, 701-703 (1) (289 SE2d 807) (1982).

> It goes without saying that all construction work is dangerous and if we applied the doctrine of assumption of the risk, which [Harcon] desires the [C]ourt to do here, there would be no construction work, as all employees would immediately be required to walk off the job or assume the risk of injury by waiving any negligence as to anyone involved.

*Kitchens*, 161 Ga. App. at 703 (1). Contrary to Harcon's assertion, it is not relevant that the alleged coercion did not originate from Harcon itself. See *York*, 217 Ga. App. at 841 ("Coercion which prevents the application of the assumption of risk defense need not come solely from defendant[.]").

For these combined reasons, the trial court erred in granting summary judgment in favor of Harcon.

*Judgment reversed. Miller, C. J., Barnes, Ellington, Phipps, Adams, and Doyle, JJ., concur. Johnson, P. J., Blackburn, P. J., Smith, P. J., and Mikell, J., concur specially. Andrews, P. J., dissents.*

JOHNSON, Presiding Judge, concurring specially.

I agree with the majority in this case on all points except that portion of the opinion which *disapproves* or overrules *Englehart v. OKI America*, 209 Ga. App. 151 (433 SE2d 331) (1993). I do not believe that the language in that case is overly broad. We did not hold in that case that every construction worker who takes a step on a job site without first looking is automatically negligent or has by that act alone necessarily assumed the risk. Therefore, I specially concur.

I am authorized to state that Presiding Judge Blackburn, Presiding Judge Smith and Judge Mikell join in this special concurrence.

ANDREWS, Presiding Judge, dissenting.

Baker lifted up the edge of the plywood covering the trash chute opening and stepped forward to push the plywood up while it blocked his view of where he was stepping. He blindly walked into the opening and fell through because he never looked under the plywood to see that the opening in the concrete floor lay beneath. Baker knew when he lifted up the plywood that Harcon, Inc. had framed the floor to leave an opening in that area for the trash chute. He knew because he was the construction supervisor who told Harcon to frame out the

trash chute opening. He knew because he marked the location on the floor where he directed Harcon to frame the trash chute opening. He knew because he saw the framed-out opening in the floor at that location before the concrete was poured around it. Moreover, when Baker saw the plywood which covered the trash chute opening, it was plainly visible that there was no uncovered trash chute opening in the area, so he had to know there was a covered or obscured opening somewhere in the area. These are undisputed facts.

"As a matter of contributory negligence, it is the rule in this state that, if the plaintiff, in the exercise of ordinary care, could have avoided the accident, he is denied recovery. OCGA § 51-11-7." *Union Camp Corp. v. Helmy*, 258 Ga. 263, 267 (367 SE2d 796) (1988). Even if Harcon was negligent or violated OSHA regulations by covering the trash chute opening with the plywood, the above facts plainly, palpably, and undisputably show that ordinary care required Baker to simply look under the plywood for the opening he knew was located in that area before blindly walking forward. His failure to do so was contributory negligence which barred his recovery as a matter of law. *Englehart v. OKI America*, 209 Ga. App. 151, 154 (433 SE2d 331) (1993).

I agree with the special concurrence that *Englehart* should not be disapproved or overruled, and that, contrary to the majority opinion, *Englehart* did not hold or suggest that every construction worker who takes a step on a job site without first looking has failed as a matter of law to exercise ordinary care for his own safety. *Englehart* held that an experienced construction worker, who was working on the second floor of a building where several openings were placed in the floor for the eventual installation of heating and air conditioning systems, failed as a matter of law to exercise ordinary care for his own safety when he removed plywood covering one of the openings and stepped into the opening. Id. at 151, 153-154. In the present case, Baker undisputably had knowledge that the trash chute opening was in the area where he lifted up the plywood. Accordingly, the present facts make a stronger case for finding contributory negligence than those in *Englehart,* and demand the conclusion that Baker failed as a matter of law to exercise ordinary care for his own safety. The trial court correctly granted summary judgment in favor of Harcon. I respectfully dissent.

DECIDED MARCH 30, 2010 —
RECONSIDERATION DENIED APRIL 14, 2010.

*Wilson & Epstein, Warner R. Wilson, Jr.,* for appellants.

*Gray, Rust, St. Amand, Moffett & Brieske, Michael J. Rust, Korey M. Carter, Bondurant, Mixson & Elmore, Frank M. Lowrey IV*, for appellee.